Adam M. Cohen, Esq. (AMC-9918)
Lauren M. Dayton, Esq. (LMD-9291)
**KANE KESSLER, P.C.**
1350 Avenue of the Americas
New York, New York 10019
(212) 541-6222
*Attorneys for Defendants and Counterclaim Plaintiffs*
*DC Shoes, Inc. and Quiksilver, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x

**BABY BEAN PRODUCTIONS LLC,**

    **Plaintiff,**

    v.

**DC SHOES INC. AND QUIKSILVER, INC.,**

    **Defendants.**

-------------------------------------------------------x

**07-CV-3616 (MGC)**

**DEFENDANTS' AMENDED**
**ANSWER, AFFIRMATIVE**
**DEFENSES AND**
**COUNTERCLAIMS**
**TO PLAINTIFFS' SECOND**
**AMENDED COMPLAINT**

Defendants DC Shoes, Inc. ("DC") and Quiksilver, Inc. ("Quiksilver") (collectively the "Defendants" or "Counterclaim Plaintiffs"), by their attorneys, Kane Kessler, P.C., as and for their Answer, Affirmative Defenses and Counterclaims ("Amended Answer") to the Second Amended Complaint of Plaintiffs Baby Bean Productions, LLC ("Baby Bean"), Danny Parks ("Danny Parks" or "Parks"), Louis Perez ("Louis Perez" or "Perez") and the partnership comprised of Danny Parks and Louis Perez (the "Partnership") (collectively, the "Plaintiffs" or "Counterclaim Defendants"),[1] aver as follows:

---

[1]  On or about May 28, 2008, counsel for Plaintiffs and Defendants executed a Stipulation (the "Stipulation," attached as **"Exhibit A"** agreeing to join as party plaintiffs Perez, Parks and the Partnership and amending the caption to include those parties as party plaintiffs.  Thereafter, the Stipulation was submitted to the Court for so ordering.  The Court refused to so order the Stipulation and requested that Perez, Parks and the Partnership themselves sign the Stipulation.  We are advised by Plaintiffs' counsel that he is in the process of obtaining signatures from the Plaintiffs and resubmitting the Stipulation for so ordering.  Accordingly, Defendants are proceeding in accordance with the Stipulation of the parties and treating Perez, Parks and the Partnership as party plaintiffs.

291027.3

<u>ANSWER</u>

**The Parties**

1.      Defendants admit, upon information and belief, the allegations contained in paragraph 1 of the Complaint.

2.      Defendants admit the allegations contained in paragraph 2 of the Complaint.

3.      Defendants admit the allegations contained in paragraph 3 of the Complaint concerning the state of formation and business address and aver that the correct spelling of Defendant's name is "Quiksilver".

4.      With respect to the allegations in paragraph 4 of the Complaint, Defendants admit that Quiksilver owns all of the outstanding equity securities of DC Shoes and otherwise deny the allegations contained in paragraph 4 of the Complaint.

**Nature of Action**

5.      With respect to paragraph 5 of the Complaint, Defendants admit that Plaintiffs purports to bring this action in part under Section 43(a) of the Lanham Act and otherwise deny the allegations contained in paragraph 5 of the Complaint.

6.      With respect to paragraph 6 of the Complaint, Defendants admit that Plaintiffs purports to bring this action in part under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and otherwise deny the allegations contained in paragraph 6 of the Complaint.

**Jurisdiction and Venue**

7.      Defendant avers that paragraph 7 of the Complaint contains legal conclusions to which no response is required.

8.     Defendant avers that paragraph 8 of the Complaint contains legal conclusions to which no response is required.

### Facts

9.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Complaint.

10.    Defendants deny the allegations contained in paragraph 10 of the Complaint.

11.    Defendants deny the allegations contained in paragraph 11 of the Complaint.

12.    Defendants deny the allegations contained in paragraph 12 of the Complaint.

13.    Defendants deny the allegations contained in paragraph 13 of the Complaint.

14.    Defendants deny the allegations contained in paragraph 14 of the Complaint.

15.    Defendants deny the allegations contained in paragraph 15 of the Complaint.

16.    Defendants deny the allegations contained in paragraph 16 of the Complaint.

17.    Defendants deny the allegations contained in paragraph 17 of the Complaint.

18.    Defendants deny the allegations contained in paragraph 18 of the Complaint.

19.    Defendants deny the allegations contained in paragraph 19 of the Complaint.

20.    Defendants deny the allegations contained in paragraph 20 of the Complaint.

21.    Defendants deny the allegations contained in paragraph 21 of the Complaint.

22.    Defendants deny the allegations contained in paragraph 22 of the Complaint.

23.    Defendants deny the allegations contained in paragraph 23 of the Complaint.

24.    Defendants deny the allegations contained in paragraph 24 of the Complaint.

### First Count
### Trademark Infringement – Defendant DC Shoes Inc.

25.    Defendants repeat and re-allege their responses to the allegations set forth in paragraphs 1 through 24 of the Complaint as if more fully set forth herein at length.

26.    Defendants deny the allegations contained in paragraph 26 of the Complaint.

27.    Defendants deny the allegations contained in paragraph 27 of the Complaint.

28.    Defendants deny the allegations contained in paragraph 28 of the Complaint.

## Second Count
### Trademark Infringement – Defendant Quiksilver, Inc.

29.     With respect to paragraph 29, Defendants repeat and re-allege their responses to the allegations set forth in paragraphs 1 through 24 of the Complaint as if more fully set forth herein at length.

30.     Defendants deny the allegations contained in paragraph 30 of the Complaint.

31.     Defendants deny the allegations contained in paragraph 31 of the Complaint.

32.     Defendants deny the allegations contained in paragraph 32 of the Complaint.

## Third Count
### Violation of the Anticybersquatting Consumer Protection Act
### 15 U.S.C. § 1125(d)

33.     With respect to paragraph 33, Defendants repeat and re-allege their responses to the allegations set forth in paragraphs 1 through 24 of the Complaint as if more fully set forth herein at length.

34.     Defendants deny the allegations contained in paragraph 34 of the Complaint.

35.     Defendants deny the allegations contained in paragraph 35 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

36.     The Second Amended Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

37.     Plaintiffs' claims are barred by the doctrines of laches, waiver, acquiescence and estoppel.

### THIRD AFFIRMATIVE DEFENSE

38.     Plaintiffs have no federal trademark rights to assert inasmuch as Plaintiff's use of the "King of New York" mark, if any, does not affect the type of commerce which may be lawfully regulated by Congress.

### FOURTH AFFIRMATIVE DEFENSE

39.     At all times referred to herein, Defendants did not willfully perform any act whatsoever constituting a violation of any rights of Plaintiff and at all times acted in good faith.

### FIFTH AFFIRMATIVE DEFENSE

40.     There is no likelihood of confusion between Plaintiffs' alleged "King of New York" designation and any trademark used by Defendants.

### SIXTH AFFIRMATIVE DEFENSE

41.     Plaintiffs have no trademark rights to assert since its alleged trademark is descriptive and/or not capable of distinguishing the services of Plaintiffs and has not achieved secondary meaning.

## SEVENTH AFFIRMATIVE DEFENSE

42.    Plaintiffs' claims are barred because Defendants have priority of use with respect to the accused designation.

## EIGHTH AFFIRMATIVE DEFENSE

43.    Plaintiffs' claims are moot.

## NINTH AFFIRMATIVE DEFENSE

44.    Plaintiff Baby Bean has failed to join an indispensable party pursuant to Federal Rules of Civil Procedure 19(a).

## TENTH AFFIRMATIVE DEFENSE

45.    Plaintiffs lack standing to assert the claims in the Complaint.

## ELEVENTH AFFIRMATIVE DEFENSE

46.    Any trademark rights being asserted in and to "King of New York" have been abandoned.

## COUNTERCLAIMS

### Allegations Common to All Counterclaims

#### The Parties

47.    At all times hereinafter mentioned, DC was and is a corporation duly organized and existing under and by virtue of the laws of the State of California, with its principal place of business located at 1333 Keystone Way, Unit A, Vista, California 92081.

48.     At all times hereinafter mentioned, Quiksilver was and is a corporation duly organized and existing under and by virtue of the laws of the State of Delaware, with its principal place of business located at 15202 Graham Street, Huntington Beach, California 92649.

49.     Upon information and belief, at all times hereinafter mentioned, Baby Bean was and is a limited liability company duly organized and existing under and by virtue of the laws of the State of Pennsylvania, with its principal place of business located at 823 Brookside Drive, Boalsburg, Pennsylvania 16827.

50.     Upon information and belief, at all times hereinafter mentioned, Danny Parks is an individual and resident of the State of Pennsylvania, is the sole member of Baby Bean Productions, LLC and is a co-partner with Louis Perez in the Partnership.

51.     Upon information and belief, at all times hereinafter mentioned, Louis Perez is an individual and resident of the State of Pennsylvania and is a co-partner with Danny Parks in the Partnership.

52.     Upon information and belief, at all times hereinafter mentioned, the Partnership consists of co-partners Danny Parks and Louis Perez.  The partnership agreement pursuant to which the Partnership was formed was executed in Pennsylvania.

**Jurisdiction and Venue**

53.     Jurisdiction is proper in this Court predicated upon federal subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, 2201 and 2202.  Jurisdiction is also proper in this Court predicated upon diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that the Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

54.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 (a), (b) and (c).

**DC Event**

55.     DC is a recognized world leader engaged in, among other things, the manufacture, marketing, sale and promotion of shoes, apparel and athletic related products. The "DC" brand has become a famous source indicator for the products and services of DC.

56.     In or about September 2006, DC hosted a month long event in New York City called the "Month of Skate," which was comprised of various sub-events relating to skateboarding and the promotion of DC's products, including (a) a skateboarding loft party in Soho, New York to unveil DC's new line of New Era DC sneakers and to introduce the DC skateboarding team and skateboarding celebrities, (b) a skateboarding event conducted throughout the five boroughs of New York City called "DC King of New York," (c) a skate rally through the streets of New York City, (d) the world's longest street course for amateur and professional skateboarding, (e) a pizza party in Soho, New York and (f) other promotional events for shoes and apparel at the new DC Soho store.

57.     The "DC King of New York" sub-event was a skateboarding event taking place in each of the five boroughs of New York City over a one month period. The event included exhibitions featuring the DC skateboarding team members, local New York City kids and celebrity skateboarders who entertained the attendees with professional stunt skateboarding.

58.     For reasons unrelated to this lawsuit, at sometime after the September 2006 Month of Skate DC decided not to conduct a future sub-event in New York City having a name including the words "King of New York". In point of fact, since September 2006 DC has not conducted an event with the words "King of New York" included in the name. Quiksilver

never conducted an event with a name including "King of New York".  Although DC and Quiksilver vigorously contest that any actions undertaken by either of them infringed any rights of Plaintiffs, for reasons unrelated to this lawsuit neither DC nor Quiksilver has any present intention to conduct any events with a name including the words "King of New York".

59.    Plaintiffs are aware that DC has not conducted an event with a name including the words "King of New York" since September 2006.

**Counterclaim Defendants' Event**

60.    Upon information and belief, in 2006 and 2007, Counterclaim Defendants were involved with an event conducted once per year at Mullaly Park in the Bronx, New York allegedly called "King of New York" (the "Mullaly Event").  The Mullaly Event was a bicycle motocross ("BMX") competition in which BMX riders competed in a variety of bicycle stunt competitions.

61.    Upon information and belief, any rights that Counterclaim Defendants claim to represent in and to the "King of New York" trademark are owned by the Partnership. Counterclaim Defendant Baby Bean owns no rights to "King of New York".

**This Lawsuit**

62.    On May 7, 2007, Counterclaim Defendant Baby Bean commenced this lawsuit by filing a Complaint and First Amended Complaint soon thereafter (collectively, the "Complaint"), asserting claims against DC pursuant to Section 43(a) of the Lanham Act alleging that DC infringed Baby Bean's common law trademark rights in the name "King of New York". On May 19, 2008, Baby Bean, by leave of Court, filed a Second Amended Complaint (the "Second Amended Complaint") against DC and Quiksilver alleging violations of Sections 43(a) and 43(d) of the Lanham Act.

63.    DC and Quiksilver have appeared in this lawsuit, answered the allegations in the Second Amended Complaint and denied and contested the material allegations of Counterclaim Defendants.

**Counterclaim Defendants' False and Defamatory Statements**

64.    Although Counterclaim Defendants knew that DC had not conducted an event with a name including the words "King of New York" since 2006 and had no intention to call a future event a name including "King of New York", on or about March 5, 2008 Counterclaim Defendant Danny Parks, individually, on behalf of Baby Bean, the Partnership of which Louis Perez is a partner and Louis Perez individually, widely distributed to numerous recipients written emails entitled "**The Truth about DC Shoes and the King of New York**" (the "March 5th Email"). Attached hereto and incorporated by reference herein as "**Exhibit B**" is a true and correct copy of the March 5th Email.

65.    The March 5th Email, which is reproduced in relevant part below, contained numerous false and defamatory statements of and concerning DC, including:

a.    "Not long ago, baby bean invited clothing and sneaker giant DC Shoes to join the King of New York event family of sponsors."

b.    "it hit us like a ton of bricks when we learned that DC Shoes had **stolen the "King of New York" name and concept** for its own event. Adding insult to injury, DC Shoes suggested that the "King of New York" event was its own creation." (emphasis added)

c.    "So baby bean asked DC Shoes to recognize our rights to the "King of New York" event name and not to use the name "King of New York" for events in the future. **DC Shoes refused**." (emphasis added)

d.    "If you'd like to help, or you just want to express what you think, let us know at dcbullshit@hotmail.com. **Pass this email along and spread the truth**. If you want to call DC

Shoes or Quicksilver [sic.] yourself, go right ahead. Phone numbers are 760-599-2999 for DC and 714-889-2200 for Quicksilver [sic.]. Thanks for listening." (emphasis added).

66.    Nowhere in the Complaint or Second Amended Complaint do Counterclaim Defendants allege, in words or substance, that DC "stole" its concept for its "King of New York" event. Upon information and belief, Counterclaim Defendants have never asserted to DC that DC stole any event concept.

67.    Upon information and belief, on March 5, 2008 and at all times thereafter, Danny Parks emailed, forwarded, sent, carbon copied and/or blind carbon copied the March 5th Email to numerous business associates, clients, customers, websites, blogs, and other persons or entities in the sports and entertainment industries.

68.    Upon information and belief, at the express urging of Danny Parks, the March 5th Email was further circulated by the original recipients to various websites and blogs for skateboarding, surfing, biking and other action sports customers, fans, enthusiasts and sports businesses and events. For example, the March 5th Email appeared on numerous sports and action sports websites and blogs, including but not limited to websites (1) www.stokedlife.com; (2) www.sublimited.net; (3) www.go211.com; (4) www.thecomeupboard; (5) www.fatbmx.com; (6) www.thrashermagazine.com;    (7) www.actionsportspress.com;    (8) www.pdxbmx.com; (9) www.brooklynbikeriders.com; (10) www.groveeffect.com; and (11) www.tumultbmx.com. Attached hereto as "**Exhibit C**" are printouts of these websites containing the March 5th Email.

69.    On the Stoked Life website, the March 5th Email was posted on March 11, 2008, and received a response in support from, upon information and belief, the website's own creator "Gio". *See* **Exhibit C** (1).

70.    On the Go211 skateboarding website, the March 5th Email is posted verbatim, and on the website where it states "posted by," the site states "**baby bean.**" (emphasis added). *See* **Exhibit C** (3).

71.    Upon information and belief, action sports customers read the aforementioned websites and blogs. On the FatBMX website, the March 5th Email was posted verbatim on March 6, 2008 by "Bart" and has received **over 600 reads**. *See* **Exhibit C** (5).

72.    On the website for Action Sports Press, one internet blogger wrote in the comments on March 6, 2008: "**Danny Parks**, the current event organizer for the original King of New York BMX event **sent out** **the following email to members of the industry yesterday explaining the situation**." (emphasis added) Upon information and belief, this internet blogger then posted the March 5th Email verbatim on the Action Sports Press website below his or her statement. *See* **Exhibit C** (7).

73.    Counterclaim Defendant Danny Parks continued to make the false and defamatory statements of and concerning DC in various chat rooms and internet blogs, including but not limited to, on March 7, 2008, Danny Parks posted a statement as "babybean" on the www.comeupboard.com blog, stating that he welcomed "feedback, positive or negative, from Edwin and all DC BMX athletes (or skate, for that matter) about what DC **has done and continues to do**." *See* **Exhibit C** (4).

74.    Upon information and belief, Danny Parks arranged for and maintained a separate email account at dcbullshit@hotmail.com solely used to monitor and respond to customer and fan statements in response to the March 5th Email.

75.    The statements made in the March 5th Email are false and defamatory in that, among other things, (i) upon information and belief Counterclaim Defendants did not invite

DC to "join the King of New York event family of sponsors", (ii) DC did not steal Counterclaim Defendants' concept, (iii) DC did not steal Counterclaim Defendants' name, (iv) DC has not used "DC King of New York" since the one and only event in September 2006, (v) DC never suggested or otherwise stated or implied that DC created Counterclaim Defendants' event, and (vi) DC has informed the Counterclaim Defendants that DC does not intend to use a name including the words "King of New York".

76.    As a result of the foregoing, DC has been irreparably damaged and continues to be damaged and injured by the dissemination of the false and defamatory statements contained in the March 5th Email and republished to the general public including  fans, consumers, business associates and sponsors.

**AS AND FOR A FIRST COUNTERCLAIM**
**On Behalf of DC Against All Counterclaim Defendants**
**(Defamation Per Se)**

77.    Counterclaim Plaintiff DC repeats and realleges each of the allegations contained in paragraphs 1 through 76 of this Amended Answer as if fully set forth here.

78.    In the March 5th Email, Counterclaim Defendants directly or indirectly made false, inaccurate and defamatory statements, implications, inferences and innuendos concerning the Counterclaim Plaintiff DC as alleged herein.

79.    In composing and promulgating the March 5th Email, Counterclaim Defendant Danny Parks was acting individually and on behalf of Counterclaim Defendants Baby Bean, the Partnership and each of the partners in the Partnership, including without limitation, Louis Perez.

80.    The false and defamatory statements made by Counterclaim Defendant Danny Parks in the March 5th Email were of and concerning DC.

81.     The plain and natural meaning of the words used in the March 5th Email, and the general tenor from the point of view of a reasonable person, state, imply and infer the provably false assertion of objective fact that Counterclaim Plaintiff DC engaged in unethical and/or illegal conduct, and imputes fraud, dishonesty, misconduct and/or unfitness in conducting DC's business and trade practices.

82.     Counterclaim Defendants, through the March 5th Email, insulted, disparaged, criticized, and/or scorned the hard earned positive reputation of Counterclaim Plaintiff DC.

83.     Counterclaim Defendant Danny Parks intended to and actually did publicize, and actively encourage and induce others to publicize, the false and defamatory statements contained in the March 5th Email to third persons by (a) sending it to the initial intended recipients; (b) upon information and belief, by blind carbon copying, sending, forwarding, emailing, and other internet distribution, such as posting the email on websites and blogs; and (c) stating in the email, "If you'd like to help, or you just want to express what you think, let us know at dcbullshit.@hotmail.com. **Pass this email along and spread the truth** . . . **Thanks for listening.**"

84.     The March 5th Email was intended to, and actually did, reach existing and potential customers, fans, enthusiasts, and businesses in the sports industry.

85.     The re-publication of the March 5th Email on various internet websites, blogs, and other fan communications, including but not limited to, the websites and blogs as hereinabove alleged, was intended to, and actually did, reach a new audience of existing and potential customers, fans, enthusiasts, and businesses in the action and extreme sports industry each and every time the March 5th Email was re-publicized.

86.    In writing and widely disseminating the March 5th Email, Counterclaim Defendants acted with malice and with reckless disregard for the truth, with a high degree of awareness of probable falsity, and with no attempt to verify the accuracy of the information that was allegedly sent out to the worldwide internet and to the public as the "truth".

87.    Counterclaim Defendants acted with intent to cause pecuniary harm to Counterclaim Plaintiff DC, and intent to influence the public's opinion of DC, intent to disparage the reputation of DC, expose DC to public contempt, ridicule, aversion, disgrace, and/or induce an evil opinion of the company in the minds of right-thinking persons in the action and sports industry.

88.    At no time did Counterclaim Defendants have any privilege or authorization to publicize to third parties the false statements in the March 5th Email.

89.    As a result of the March 5th Email, Counterclaim Plaintiff DC has suffered damages and injury to its reputation, loss of existing and potential customers and fans, loss of competitors, promoters, marketing, celebrities, consumers, and fans, and loss of existing and future profits and revenues.

90.    The March 5th Email constitute defamation per se.

91.    By reason of the foregoing, Counterclaim Plaintiff DC has been damaged in an amount to be determined at trial, but not less than $1,000,000.

92.    The conduct of Counterclaim Defendants, as alleged herein, was malicious and oppressive, was perpetrated with specific intent to vex and injure DC, with an awareness of the injurious consequences of such actions to DC and/or with a reckless and wanton disregard of DC's rights, by reason of which Counterclaim Plaintiffs are entitled to punitive damages in an amount to be determined at trial, but not less than $2,000,000.

## AS AND FOR A SECOND COUNTERCLAIM
### On Behalf of Counterclaim Plaintiff DC Against All Counterclaim Defendants
### (Vicarious Liability)

93.    Defendants repeat and reallege each of the allegations contained in paragraphs 1 through 92 of this Amended Answer as if fully set forth herein.

94.    Counterclaim Defendants Baby Bean, Parks, Perez and the Partnership are vicariously liable for the tortious acts and omissions of each other, including but not limited to, the composing, sending, and promulgating of the March 5th Email defaming and intentionally causing harm to Counterclaim Plaintiff DC.

95.    Counterclaim Defendant Danny Parks is a member of Baby Bean, and at all relevant times, including on March 5, 2008 when composing, sending, and promulgating the March 5th Email, was acting in his official capacity and within the scope of employment as a member of Baby Bean in representing the intentions, interests and business of Baby Bean.

96.    Counterclaim Defendant Danny Parks is a co-partner with Louis Perez and a partner of the Partnership, and at all relevant times, including on March 5, 2008 when composing, sending, and promulgating the March 5th Email, was acting in his official capacity and within the scope of employment as co-partner of Louis Perez and as partner of the Partnership in representing the intentions, interests and business of both Perez and the Partnership.

97.    As a result of the foregoing, Counterclaim Defendants Baby Bean, Parks, Perez and the Partnership are jointly and severally liable as tortfeasors for the acts and omissions of each other, as detailed above, in defaming and intentionally causing harm to DC, including but not to, by and through the March 5th Email and its publication and re-publication to the public.

98.    As a result of the acts and omissions of Counterclaim Defendants, Counterclaim Plaintiff DC suffered damages and injury to its reputation, loss of existing and potential customers and fans, loss of competitors, promoters, marketing, celebrities, consumers, and fans, and loss of existing and future profits and revenues.

99.    By reason of the foregoing, Counterclaim Plaintiff DC has been damaged in an amount to be determined at trial, but not less than $1,000,000.

100.    The conduct of Counterclaim Defendants, as alleged herein, was malicious and oppressive, was perpetrated with specific intent to vex and injure DC, with an awareness of the injurious consequences of such actions to DC and/or with a reckless and wanton disregard of DC's rights, by reason of which Counterclaim Plaintiff is entitled to punitive damages in an amount to be determined at trial, but not less than $2,000,000.

**AS AND FOR A THIRD COUNTERCLAIM**
**<u>On Behalf of All Counterclaim Plaintiffs Against All Counterclaim Defendants</u>**
**(Declaratory Judgment – Lanham Act)**

101.    Counterclaim Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 100 of this Amended Answer as if fully set forth herein.

102.    This Counterclaim for declaratory judgment arises under the United States Lanham Act, 15 U.S.C. § 1051 et. seq.

103.    This Counterclaim is for, among other things, a declaration by the Court that the conduct of Counterclaim Plaintiffs has not constituted false designation of origin pursuant to 15 U.S.C. §1125(a) or violations of Sections 43(d) of the Lanham Act, 15 U.S.C. §1125(d) and that Counterclaim Defendants have no trademark rights capable of being asserted under the United States Lanham Act.

104.    Counterclaim Defendants have commenced the instant action claiming that the actions of Counterclaim Plaintiffs have constituted false designation of origin under Section 43(a) of the Lanham Act and cybersquatting pursuant to Section 43(d) of the Lanham Act. Counterclaim Plaintiffs deny such allegations.

105.    Counterclaim Defendants alleged trademark rights are not capable of being asserted pursuant to the Lanham Act because such alleged trademark use have not and do not affect the type of commerce which may be lawfully regulated by Congress.

106.    Counterclaim Defendants have no trademark rights capable of being asserted under the Lanham Act because the alleged trademark is merely descriptive pursuant to 15 U.S.C. §1052(e) and otherwise not capable of differentiating the services of Counterclaim Defendants and has not achieved secondary meaning.

107.    Counterclaim Plaintiffs have priority of use with respect to the accused designation.

108.    Counterclaim Defendants do not own the trademark rights they seeks to assert and have no standing to bring this action.

109.    There is no likelihood that an appreciable number of reasonably prudent consumers would be confused as to source, sponsorship or affiliation by the concurrent use in commerce of Counterclaim Defendants' alleged "King of New York" designation and any trademark used by Counterclaim Plaintiffs.

110.    Counterclaim Defendant Baby Bean is not entitled to registration of the KING OF NEW YORK trademark and their two pending applications for registration of such applications should be denied on the grounds that, among other things, Counterclaim Defendant

Bean does not own the mark and has perpetrated fraud on the United States Patent and Trademark Office in connection with the prosecution of those two applications.

111.    The claims asserted by Counterclaim Defendants are moot.

112.    By reason of the foregoing, an actual controversy has arisen and exists between the parties.

113.    By reason of the foregoing, Counterclaim Plaintiffs should be granted declaratory judgment that its actions do not constitute false designation of original under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) or violations of Section 43(d) of the Lanham Act, the Anti-Cybersquattting Consumer Protection Act, 15 U.S.C. §1125(d).

114.    By reason of the forgoing, the Court should declare that Counterclaim Defendants' alleged trademark "King of New York" is not capable of federal registration or protection under the United States Lanham Act.

115.    By reason of the forgoing, the Court should order that the United States Patent and Trademark Office should deny Counterclaim Defendant Baby Bean's pending applications for federal trademark registration Serial Nos. 78/969383 and 77/396993 for the mark "King of New York."

**WHEREFORE**, Defendants/Counterclaim Plaintiffs demand judgment against Plaintiffs/Counterclaim Defendants as follows:

(a)    Plaintiffs' Second Amended Complaint be dismissed with prejudice;

(b)    On the first counterclaim for defamation per se, relief against Counterclaim Defendants Baby Bean, Parks, Perez and the Partnership in an amount to be proved at trial, including damages and punitive damages, believed to be in excess of $3,000,000.

(c)    On the second counterclaim for vicarious liability, relief against Counterclaim Defendants Baby Bean, Parks, Perez and the Partnership in an amount to be proved at trial, including damages and punitive damages, believed to be in excess of $3,000,000.

(d)    On the third counterclaim, declaratory judgment that Counterclaim Plaintiffs' actions do not constitute false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) or cybersquatting under Section 43(d) of the Lanham Act, 15 U.S.C. §1125(d); and

(e)    On all causes of action, the costs and disbursements of this action, including reasonable attorney's fees, together with such other, further and different relief as to the Court seems just and proper.

Dated: New York, New York
      July 1, 2008

KANE KESSLER, P.C.

By: _____
    Adam M. Cohen (AMC-9918)
    Lauren M. Dayton (LMD-9291)
1350 Avenue of the Americas
New York, New York 10019
(212) 541-6222
*Attorneys for Defendants/Counterclaim Plaintiffs*
*DC Shoes, Inc. and Quiksilver, Inc.*