UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

BABY BEAN PRODUCTIONS LLC,                   :
                                             :
                    Plaintiff,               :
                                             :
          v.                                 :     07-CV-3616 (MGC)
                                             :
DC SHOES INC. and QUIKSILVER, INC.,          :
                                             :
                    Defendants.              :
------------------------------------------------------------x

MEMORANDUM OF LAW OF DEFENDANTS/COUNTERCLAIM
PLAINTIFFS IN OPPOSITION TO COUNTERCLAIM DEFENDANTS'
MOTION TO DISMISS THE COUNTERCLAIMS AND FOR
SANCTIONS

KANE KESSLER, P.C.
*Attorneys for Defendant DC Shoes Inc. and Quiksilver, Inc.*
1350 Avenue of the Americas
New York, New York 10019
(212) 541-6222

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ............................................................................ 1

PROCEDURAL POSTURE AND RELEVANT FACTS ......................................... 5

    *Underlying Case and Procedural Posture* ...................................................... 5

    *Facts Relating to Ownership of Purported Trademark Being Asserted in Underlying Case* ... 5

ARGUMENT

I.   THE MOTION TO DISMISS THE COUNTERCLAIMS
     BASED ON INSUFFICENT SERVICE SHOULD BE DENIED ........................... 7

    A.  Parks, Perez and the Partnership Consented to Be Joined As Party Plaintiffs When Their
        Attorney Signed a Stipulation So Providing On Their Behalf and are Equitably Estopped
        To Complain About Service ...................................................... 7

    B.  The Motion to Dismiss Pursuant to 12(b)(2) is Premature ................................... 9

    C.  If the Court is Not Inclined to Direct Parks, Perez and the Partnership to Sign the ...........
        Stipulation, Such Counterclaim Defendants Should be Joined Pursuant to Fed. R. Civ. P.
        Rule 13(h) .................................................................... 9

       1.  Joinder of Parks, Perez and the Partnership Is Appropriate Under Fed. R. C. P. 20 .. 10

       2.  Joinder of Parks, Perez and the Partnership Is Also Appropriate Fed. R. Civ. P. 19 .. 10

    D.  Counterclaim Defendants' Argument That the Partnership Does Not Exist
        and Therefore Could Not Have Been Served is Specious ................................ 12

II.  COUNTERCLAIM DEFENDANTS LOUIS PEREZ AND THE
     PARTNERSHIP'S ARGUMENT THAT THE COURT LACKS PERSONAL
     JURISDICTION OVER THEM SHOULD BE REJECTED ................................ 14

III. COUNTERCLAIM DEFENDANTS' ARGUMENTS THAT THE
     COUNTERCLAIMS FAIL TO STATE A CLAIM UPON WHICH
     RELIEF MAY BE GRANTED SHOULD BE REJECTED ................................ 16

A.  Counterclaim Plaintiff DC Has Properly Plead a Claim for Defamation Per Se .............. 17

B.  The Claims of Defamation Per Se Against Danny Parks, Louis Perez and
The Partnership Should be Sustained ................................................................................ 19

C.  The Second Counterclaim for Vicarious Liability Should be Sustained ......................... 22

IV. COUNTERCLAIM DEFENDANTS' MOTION FOR SANCTIONS
SHOULD BE REJECTED AND IS ITSELF SANCTIONABLE ......................................... 23

A.  Counterclaim Plaintiff DC's Claims are Colorable and Meritorious ............................... 24

    1.  Claims Against Individual Defendants ...................................................................... 24

        a.  Danny Parks .................................................................................................... 25
        b.  Louis Perez ..................................................................................................... 25

    2.  Ad Damnum Request ................................................................................................. 25

B.  The Actions of Counterclaim Defendants are Themselves Sanctionable ......................... 26

CONCLUSION ............................................................................................................................. 28

## TABLE OF AUTHORITIES

*Cases*                                                                    *Page*

Amadsau v. Bronx Lebanon Hospital Center,
   No. 03 Civ. 6450, 2005 WL 121746 (S.D.N.Y. Jan. 21, 2005) .............................17

Birmingham Associate Ltd. v. Abbott Laboratoriess,
   547 F. Supp. 2d 295 (S.D.N.Y. 2008) ......................................................................8

Boule v. Hutton,
   328 F.3d 84 (2d Cir. 2003) ......................................................................................17

Carell v. Shubert Organization, Inc.,
   104 F. Supp. 2d 236 (S.D.N.Y. 2000) ....................................................................22

Celle v. Filipino Reporter Enterprises, Inc.,
   209 F.3d 163 (2d Cir. 2000) ....................................................................................17

Copenhagen Reinsurance Co (UK) Ltd. v. Sargeant Marine, Inc.,
   No. 98 Civ. 1476, 1998 WL 323489 (S.D.N.Y. 1998) ...........................................14

In re Cross Media Marketing Corp.,
   367 B.R. 435 (S.D.N.Y. Bkrtcy 2007) ...................................................................13

CutCo Industrial, Inc. v. Naughton,
   806 F.2d 361 (2d Cir.1986) ...............................................................................14, 15

Dillon v. City of New York,
   261 A.D.2d 34, 704 N.Y.S.2d 1 (1999) ..................................................................17

Durkin v. Shea,
   957 F. Supp. 1360 (S.D.N.Y. 1997) .......................................................................20

E.E.O.C. v. Die Fliedermaus,
   77 F. Supp. 2d 460 (S.D.N.Y. 1999) ......................................................................22

Ederer v. Gursky,
   9 N.Y.3d 514, 881 N.E.2d 204, 851 N.Y.S.2d 108 (N.Y. 2007).............................20

Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,
   1992 WL 170559 (S.D.N.Y. 1992) ........................................................................16

Federal Deposit Insurance Corp. v. Shea & Gould,
   No. 95 Civ. 5491, 1997 WL 401822 (S.D.N.Y. July 17, 1997) ..............................20

First National Bank of Ann Arbor, Michigan v. Farson,
    226 N.Y. 218, 123 N.E. 490 (1919) ......................................................................20

Gotham Holdings, LP v. Health Grades, Inc.,
    534 F. Supp. 2d 442 (S.D.N.Y. 2008) ..................................................................16

Grand River Enterprise Six Nations,  Ltd. v. Pryor,
    425 F.3d 158 (2d Cir. 2005) ................................................................................14

Hughes v. BCI Intern. Holdings, Inc.,
    452 F. Supp. 2d 290 (S.D.N.Y. 2006) ..................................................................22

IUE AFL-CIO Pension Fund v. Herrmann,
    9 F.3d 1049 (2d Cir. 1993) ..................................................................................16

Khulamani v. Barclay National Bank Ltd.,
    504 F.3d 254 (2d Cir. 2007) ................................................................................22

Kidz Cloz, Inc. v. Officially for Kids, Inc.,
    320 F. Supp. 2d 164 (S.D.N.Y. 2004) ..................................................................13

Lewis v. Rosenfeld,
    138 F. Supp. 2d 466 (S.D.N.Y. 2001) ..................................................................19

Lopresti v. Terwilliger,
    126 F.3d 34 (2d Cir. 1997) ..................................................................................21

Lutzker v. Novo Nordisk Pharms., Inc.,
    No. 07 CV 3272, 2008 WL. 905040 (E.D.N.Y. April 2, 2008) ..............................22

MJ & Partners Restaurant Ltd. Partnership v. Zadikoff,
    126 F. Supp. 2d 1130 (N.D. Ill. 1999)..................................................................15

Manhattan Life Insurance Co. v. A.J. Stratton Syndicate,
    731 F. Supp. 587 (S.D.N.Y. 1990) ......................................................................16

Marine Midland Bank, N.A. v. Miller,
    664 F.2d 899 (2d Cir. 1981) ................................................................................21

Mattis v. Zheng,
    No. 05 Civ 2924, 2006 WL 3155843, *4 (S.D.N.Y. 2006)......................................8

Mone v. C.I.,
    774 F.2d 570 (2d Cir. 1985) ................................................................................24

Motorola Credit Corp. v. Uzan,
   388 F.3d 39 (2d Cir. 2004) ......................................................................20

National Equip. Rental, Ltd. v. Szukhent,
   375 U.S. 311, 84 S. Ct. 411, 11 L. Ed. 2d 354 (1964)..............................14

Nortex v. Trading Corp v. Newfield,
   311 F.2d 163 (2d Cir. 1962) ......................................................................7

Otterbourg, Steindler, Houston & Rosen, P.C. v. Shreve City Apartments Ltd.,
   147 A.D.2d 327, 543 N.Y.S.2d 978 (N.Y. App. 1 Dep't 1989)...............15

Ruder & Finn, Inc. v. Seaboard Surety Co.,
   52 N.Y.2d 663, 439 N.Y.S.2d 858 (1981) ...............................................17

Ryan v. Brophy,
   755 F. Supp. 595 (S.D.N.Y. 1991) ...........................................................19

Salvatore v. Kumar,
   45 A.D.3d 560, 845 N.Y.S.2d 384 (2d Dep't 2007) .................................17

In re Selheimer & Co.,
   319 B.R. 384 (E.D.Pa. Bkrtcy 2005) .......................................................20

Sims v. Artuz,
   230 F.3d 14 (2d Cir. 2000) ......................................................................16

Spencer Kellogg & Sons, Inc. v. Bush,
   31 Misc. 2d 70, 219 N.Y.S.2d 453 (N.Y. Sup. 1961)..............................12

Tupper v. Haymond & Lundy, No. Civ. A. 00-3550,
   No. Civ A. 00-3550, 2001 WL 936650 (E.D. Pa. Aug. 16, 2001) ..........20

### Statutes and Treatises

15 P.S. § 8327(1) ......................................................................................20
15 U.S.C. § 1125(d)...................................................................................11
28 U.S.C. § 1927 ...........................................................................23, 24, 27
Fed. R. Civ. P. 4(m)....................................................................................3, 9
Fed. R. Civ. Proc. 5(b) ................................................................................7
Fed. R. Civ. P. 11.......................................................................................23
Fed. R. Civ. P. 12(b)(2) ..............................................................................1
Fed. R. Civ. P. 12(b)(5) ..............................................................................1
Fed. R. Civ. P. 12(b)(6) ...........................................................................1, 16
Fed. R. Civ. P. 13(h)..................................................................................9, 10

Fed. R. Civ. P. 19.................................................................................................9, 10
Fed. R. Civ. P. 20....................................................................................................10
McCarthy on Trademarks and Unfair Competition, J. Thomas McCarthy, 4th ed. §3:2 at
    3-3 (2008) .........................................................................................................12
N.Y. C.P.L.R. § 302(a)..........................................................................................14
N.Y. Partnership Law § 24 (McKinney's 2001) ....................................................20
N.Y. Partnership Law § 26 (McKinney's 2001) ....................................................19

Adam M. Cohen, Esq. (AMC-9918)
Lauren M. Dayton, Esq. (LMD-9291)
**KANE KESSLER, P.C.**
1350 Avenue of the Americas
New York, New York 10019
(212) 541-6222
*Attorneys for Defendants and Counterclaim Plaintiffs*
*DC Shoes, Inc. and Quiksilver, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

| | |
|---|---|
| **BABY BEAN PRODUCTIONS LLC,** | 07-CV-3616 (MGC) |
| | |
| **Plaintiff,** | **MEMORANDUM OF LAW** |
| | **OF DEFENDANTS/** |
| | **COUNTERCLAIM** |
| **v.** | **PLAINTIFFS IN OPPOSITION** |
| | **TO COUNTERCLAIM** |
| **DC SHOES, INC. AND QUIKSILVER, INC.,** | **DEFENDANTS' MOTION TO** |
| | **DISMISS THE** |
| **Defendants.** | **COUNTERCLAIMS AND FOR** |
| | **SANCTIONS** |

-----------------------------------------------------------x

Defendants/Counterclaim Plaintiffs DC Shoes, Inc. ("DC") and Quiksilver, Inc. ("Quiksilver") (collectively, "Defendants" or "Counterclaim Plaintiffs") hereby submit their Memorandum of Law in Opposition to Counterclaim Defendants' Motion to Dismiss Counterclaims Under Federal Rules of Civil Procedure 12(b)(2), (5) and (6) and for Sanctions ("Motion to Dismiss").

## PRELIMINARY STATEMENT

*"So it hit us like a ton of bricks when we learned that DC Shoes had stolen*
*the 'King of New York' name and concept for its own event. Adding insult to injury,*
*DC Shoes suggested that the 'King of New York' event was its own creation!"*

**Danny Parks, March 5, 2008**

\*        \*        \*

295241.4

Counterclaim Defendant Danny Parks ("Parks") wrote the above words and widely disseminated them in a March 5, 2008 email to many individuals and businesses in the sports and entertainment industries. The above-statement is false and defamatory per se. Defendant and Counterclaim DC did not "steal" anything, let alone any event concept, and did not suggest that any events of Parks or Baby Bean Productions LLC ("Baby Bean") were created by DC.

It is clear that Danny Parks sent this email in an effort to strong-arm DC into settling the underlying trademark infringement case that he continues to press even though DC has not used the words "King of New York" as part of an event name since its single event in 2006. Apparently, Parks thinks because he is the "little guy" he can defame whoever he likes with impunity and then cry foul and/or hide behind the corporate shield of his company when he is called to task. Rather than capitulating to Parks's scheme, DC asserted counterclaims for defamation per se and vicarious liability, which are the subject of the instant motion to dismiss.

The Counterclaims are asserted against (1) the Plaintiff Baby Bean, (2) Danny Parks - - the author of the defamatory statements and the sole member of Baby Bean, (3) the partnership (the "Partnership") that allegedly owns the "King of New York" trademark and event, which trademarks and event are the subject of the defamatory statements, and (4) Louis Perez ("Perez") - - the other partner in the Partnership.

Counterclaim Defendants move to dismiss the Counterclaims on several grounds, all of them baseless. First, they assert that the Counterclaims have not been served on any Counterclaim Defendants other than Baby Bean because such Counterclaim Defendants are not yet party plaintiffs and electronic filing therefore did not constitute service. This argument is disingenuous and made in bad faith in that, as we describe below, Plaintiff's counsel signed a

Stipulation on behalf of Parks, Perez and the Partnership agreeing to have them join the case as party plaintiffs and plaintiff's counsel has represented that he is in the process of completing the formalities to get such parties formally joined as plaintiffs. Plaintiff's counsel does not even mention this Stipulation once in its motion papers, apparently hoping that if he ignores the Stipulation the Court will forget about its existence. Because of the Stipulation, Counterclaim Defendants are equitably estopped to claim that they were not served by the electronic filing of the Counterclaims (which of course constitutes good service on all parties).

In any event, an argument that Counterclaim Defendants have not been served with the Counterclaims is premature in that the 120 days allowed for by Fed. R. Civ. P. 4(m) to effect service has not nearly elapsed.

Second, Counterclaim Defendants Perez and the Partnership move to dismiss the Counterclaims on the grounds that Perez and the Partnership are not subject to the personal jurisdiction of the Court. This argument is again duplicitous and made in bad faith in that these Counterclaim Defendants have already agreed to be named as party plaintiffs in the Stipulation and have thereby consented to the assertion by this Court of personal jurisdiction over them and are equitably estopped to claim otherwise. In any event, Perez is clearly subject to personal jurisdiction here in that he has been an organizer of plaintiff's King of New York event in New York City for many years, is currently actively involved in the operation of such New York City event, regularly attends and participates in the New York City event, and was for many years employed by the New York City Department of Parks and Recreation. The Partnership is subject to personal jurisdiction here in that the sole purpose of the Partnership is to operate the "King of New York" event in New York City.

Third, Counterclaim Defendants Parks, Perez and the Partnership move to dismiss the Counterclaims on the grounds that the Counterclaims fail to state a claim upon which relief may be granted. This argument must be rejected for the following reasons among others: (1) contrary to the assertions of Counterclaim Defendants, the Counterclaims adequately plead the falsity of the statements and (2) the individuals and the Partnership are proper defendants in that Parks as the author of the defamatory comments is individually liable for his own tortious conduct and cannot hide behind the corporate shield of his company, and, as a matter of law and fact, Perez as a partner and the Partnership itself is liable for the defamatory statements of a co-partner made in furtherance of the partnership business.

Finally, the Counterclaim Defendants move for sanctions on the grounds that the Counterclaims are not properly interposed against Parks (the author of the defamatory email) and Perez and on the grounds that the Counterclaims seek significant damages against these defendants in an amount to be proven at trial. This motion for sanctions is preposterous and is in itself sanctionable.[1] As we state above and amply demonstrate below, the individuals are proper Counterclaim Defendants. Moreover, seeking damages in an unspecified amount believed to exceed a specified amount is hardly sanctionable, particularly where, as here, the alleged injury is significant. Bottom line: If Danny Parks does not like being sued for defamation he should not disseminate extra-judicial defamatory statements intended to gain him an advantage in his harassing, vexatious and purposeless lawsuit.

---

[1] On July 31, 2008, as a precursor to Defendants' own Rule 11 motion, counsel for Defendants wrote a letter to Plaintiff's counsel requesting that the motion to dismiss counterclaims and for sanctions be withdrawn.

## PROCEDURAL POSTURE AND RELEVANT FACTS

*Underlying Case and Procedural Posture*

   Defendants/Counterclaim Plaintiffs Quiksilver and DC are world leaders in the marketing, manufacture, sale and promotion of shoes, apparel, and athletic-related products. (See Defendants' Amended Answer, Affirmative Defenses and Counterclaims to Plaintiff's Second Amended Complaint dated July 1, 2008 ("Counterclaims") ¶ 55, attached to the Declaration of Lauren M. Dayton, Esq. dated August 6, 2008 ("Dayton Declaration") as <u>Exhibit A</u>. In the underlying action, plaintiff Baby Bean asserts claims against DC and Quiksilver for false designation of origin and cybersquatting pursuant to Sections 43(a) and (d) of the Lanham Act. (See Second Amended Complaint dated May 19, 2008 (the "Complaint")). Baby Bean claims that DC infringed Baby Bean's alleged rights in the designation "King of New York" by operating a single event in 2006 a part of which was called "DC King of New York". The case is currently in discovery.

   Although Defendants believe that Baby Bean does not own the trademark "King of New York" and has no trademark rights capable of being asserted, DC has not operated an event with "King of New York" in its name since its single event in 2006. (Counterclaims ¶¶ 58, 59) Nonetheless, Baby Bean continues to press its claims and take up the valuable resources of this Court and Defendants for reasons that are unfathomable to Defendants.

*Facts Relating to Ownership of Purported Trademark Being Asserted in Underlying Case*

   Plaintiff Baby Bean does not own the rights in "King of New York" it seeks to assert. (Counterclaims ¶ 61) The Partnership Agreement between Parks/Baby Bean and Perez (Dayton Dec. <u>Exhibit I</u>)[2] and the deposition testimony of Parks make it amply clear that whatever

---

[2] Since Plaintiff has designated the Partnership Agreement as "Highly Confidential - - Attorney's Eyes Only" under the Protective Order in this case, we are submitting this document to the Clerk's Office separately under seal.

trademark rights Baby Bean is asserting in "King of New York" are owned <u>not</u> by Baby Bean but by the Partnership comprised of Parks/Baby Bean and Perez. (<u>See</u>, <u>e.g.</u> Counterclaims ¶ 61). When Defendants' counsel brought this fact to the attention of Plaintiff's counsel and informally raised a standing/capacity to sue/indispensable party defense, Plaintiff's counsel volunteered that he would resolve this problem and thereby avoid motion practice by agreeing to join as party plaintiffs Parks, Perez and the Partnership. (Dayton Dec. ¶ 4).

On or about May 29, 2008 Defendants' counsel and Plaintiff's counsel Jeffrey Sonnabend on behalf of Baby Bean, Perez, Parks and the Partnership signed a Stipulation (the "Stipulation") agreeing to join Parks, Perez and the Partnership as party plaintiffs (Counterclaims, Ex. "A"). The Stipulation was submitted to the Court for so ordering on June 2, 2008. (<u>See</u> Stipulation attached to Dayton Dec. as <u>Exhibit B</u>). Within a few days after the Stipulation was submitted to the Court, Defendants' counsel (and, we understand, Plaintiff's counsel) received a call from the Court indicating that the Court had not signed the Stipulation because the Court wanted the individual persons and entity who were to be joined to sign the Stipulation themselves. (Dayton Dec. ¶ 5). Thereafter, Plaintiff's counsel represented to Defendants' counsel that he would obtain the necessary signatures and re-submit the Stipulation. (Dayton Dec. ¶ 6 and <u>Exhibit C</u>).

Defendants filed their Counterclaims on July 1, 2008. At this time, Plaintiff's counsel still had not yet re-submitted the Stipulation despite his representation that he would do so. Relying on Plaintiff's counsel repeated assurances that he would re-submit the Stipulation, as he had already agreed to in the original Stipulation which he signed, Defendants filed their Counterclaims against Baby Bean, Parks, Perez and the Partnership. Defendants' counsel was therefore very surprised to see Plaintiff's counsel in this motion disavow his prior contractual

commitment to join Parks, Perez and the Partnership and in bad faith assert arguments based on the very fact that Parks, Perez and the Partnership were not parties to the action.

**ARGUMENT**

**I.**

**THE MOTION TO DISMISS THE COUNTERCLAIMS**
**BASED ON INSUFFICENT SERVICE SHOULD BE DENIED**

**A.     Parks, Perez and the Partnership Consented to Be Joined As Party Plaintiffs**
**When Their Attorney Signed a Stipulation So Providing On Their Behalf**
**and are Equitably Estopped To Complain About Service**

Counterclaim Defendants Danny Parks, Louis Perez and the Partnership comprised of Danny Parks and Louis Perez move to dismiss the Counterclaims on the grounds that they are not parties to the litigation and therefore were not properly served with the Counterclaims. This argument is duplicitous and tendered in bad faith in light of the fact that their attorney on their behalf signed a Stipulation agreeing to have these Counterclaim Defendants joined as party plaintiffs.

Counterclaim Plaintiffs served all Counterclaim Defendants by electronically filing the Amended Answer and Counterclaims on Counterclaim Defendants attorneys, which is the proper procedure under the Electronic Filing Rules of this Court. See Section 9 of the S.D.N.Y. Electronic Case Filing Rules and Instructions ("Transmission of the Clerk's Notice of Electronic Filing of a document shall constitute service of such document upon any Filing User in that case"); Nortex v. Trading Corp v. Newfield, 311 F.2d 163 (2d Cir. 1962) (a party may effectuate service upon the opposing party's attorney of a pleading containing a counterclaim and personal service thereof is not necessary); see also Fed. R. Civ. Proc. 5(b) (if a party is represented by an attorney, proper service can be made on the attorney). After consenting through their attorney to joinder as party plaintiffs, they cannot in good faith now argue, and are

equitably estopped to argue, that service upon them as a party via electronic filing was insufficient.

Equitable estoppel prohibits a party from taking a position, having the opposing party rely on that position, and then taking the contrary position when it is convenient to do so. See, e.g., Mattis v. Zheng, No. 05 Civ 2924, 2006 WL 3155843, *4 (S.D.N.Y. 2006). "The purpose of the doctrine of equitable estoppel is to prevent a plaintiff from, in effect, trying to have its cake and eat it too; that is, from relying on the contract when it works to its advantage by establishing the claim, and repudiating it when it works to its disadvantage by requiring arbitration." Birmingham Assoc. Ltd. v. Abbott Labs., 547 F. Supp. 2d 295, 301-02 (S.D.N.Y. 2008) (internal citations omitted). When a party remains silent "in the face of an explicit contrary assumption by an innocent party," such silence may "constitute a concealment of facts or a false misrepresentation for estoppel purposes." Mattis v. Zheng, 2006 WL 3155843 at *4.

Here, Plaintiff's counsel, acting on behalf of Perez, Parks and the Partnership, consented in the Stipulation to being named as party plaintiff. Counterclaim Plaintiff relied on Counterclaim Defendants' agreement to be named as party plaintiffs. Counterclaim Defendants are equitably estopped to now take the contrary position. Moreover, Counterclaim Defendants' counsel had the opportunity to state (1) that a partnership did not exist and thus could not be a party plaintiff and (2) that he did not represent Parks, Perez and the Partnership in executing and signing the Stipulation; however, counsel remained silent on these points. He did none of those things and in fact made it clear that he did represent Parks, Perez and the Partnership. (Dayton Dec. ¶ 6, Exhibits C and D). As a result, Plaintiff's counsel is now estopped to claim that Counterclaim Defendants Parks, Perez and the Partnership are not party plaintiffs and therefore were not properly served.

The reality is that Plaintiff and Counterclaim Defendants were more than happy to be named as party plaintiffs when it was convenient to do so to resolve a standing and/or indispensable party issue. Counterclaim Defendants cannot now disavow this agreement to be named as party plaintiffs because they realize that they also may be named as counterclaim defendants. Counterclaim Defendants cannot have it both ways. We submit that the Court should deny the motion to dismiss based on lack of service and require Plaintiff's counsel to obtain the requested signatures (as he has agreed to do) so that this case may move forward.

**B.**      **The Motion to Dismiss Pursuant to 12(b)(2) is Premature**

Moreover, Fed. R. Civ. P. 4(m) provides that a plaintiff has 120 days from filing of complaint to effectuate service. Fed. R. Civ. P. 4(m). Counterclaim Plaintiffs filed the Counterclaims on July 1, 2008. Accordingly, Counterclaim Plaintiffs have until October 30, 2008 to effectuate service and the objecting Counterclaim Defendants' motion to dismiss for lack of service is premature and should be denied on that ground as well.[3]

**C.**      **If the Court is Not Inclined to Direct Parks, Perez and the Partnership to Sign the Stipulation, Such Counterclaim Defendants Should be Joined Pursuant to Fed. R. Civ. P. Rule 13(h)**

If the Court is not inclined to direct Plaintiff's counsel to obtain the necessary signatures of Parks, Perez and the Partnership to the Stipulation, Counterclaim Plaintiff requests that Parks, Perez and the Partnership be joined as counterclaim defendants pursuant to Fed. R. Civ. P. 13(h). Fed. R. Civ. P. 13(h) allows additional parties to be joined as counterclaim defendants where it would be permissible under Fed. R. Civ. P. 19 and 20.

---

[3] Counterclaim Defendants' failure to grasp the timing of the filing of a complaint and service of process is exemplified by their statement that "Counterclaim Plaintiffs do not allege that the Counterclaim Defendants have been served with process". (Motion to Dismiss at 6) Of course, it is impossible for a complaint to allege service of process because by definition the complaint is prepared and filed *before* it is served.

**1.    Joinder of Parks, Perez and the Partnership Is Appropriate Under Fed. R. C. P. 20**

Here, joinder of Perez, Parks and the Partnership in the Counterclaims is appropriate under Fed. R. Civ. P. 20 ("Permissive Joinder of Parties"). Fed. R. Civ. P. 20(a)(2) provides in relevant part that,

> "Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Counterclaim Plaintiff DC seeks relief against Perez, Parks and the Partnership jointly and severally and such relief arises from the same series of transactions forming the basis for the Counterclaim against Counterclaim Defendant Baby Bean, to wit the defamatory emails circulated by Parks on or about March 5, 2008. Moreover, common questions as to law and/or fact will arise in the action, to wit, *inter alia*, were the statements susceptible of a defamatory connotation and what damages have resulted therefrom. Accordingly, Parks, Perez and the Partnership should be joined as counterclaim defendants pursuant to Fed. R. Civ. P. 13(h) and 20.[4]

**2.    Joinder of Parks, Perez and the Partnership Is Also Appropriate Under Fed. R. Civ. P. 19**

Moreover, Parks, Perez and the Partnership comprised of Danny Parks and Louis Perez are necessary and indispensable parties to Plaintiff's claims and therefore are necessary and indispensable parties to Counterclaim Plaintiffs' Third Counterclaim for a declaration that, among other things, Counterclaim Plaintiffs have not violated Section 43(d) of the Lanham Act. Fed. R. Civ. P. 19 provides in relevant part:

---

[4] We demonstrate below at Section III. B why Counterclaim Plaintiff DC has alleged meritorious claims of defamation against Parks, Perez and the Partnership.

"(a)(1) *Required Party*. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject matter of the action and is so situated that disposing of the action in the person's absence may: . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

Here, there is no question that Parks, Perez and the Partnership claim an interest relating to the subject matter of the action (the Partnership owns the alleged "King of New York" trademark being asserted) and are so situated that failure to join Parks, Perez and the Partnership leaves Defendants at substantial risk of facing multiple and double claims because even after adjudication of these claims in this action such parties may seek to attack Defendants all over again in separate proceedings.

Moreover, the Partnership is the *only* entity capable of asserting a claim under Section 43(d) of the Lanham Act. Section 43(d) of the Lanham Act provides in pertinent part:

"A person shall be liable in a civil action by the *owner* of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person . . . ."

15 U.S.C. § 1125(d)(1)(A) (emphasis added).

Nowhere in the Complaint does Plaintiff Baby Bean allege that it is the owner of "King of New York". In fact, the word "owner" does not appear anywhere in the Complaint. Plaintiff Baby Bean's failure to allege ownership is no mere oversight; Baby Bean *cannot* allege that it is the owner of "King of New York" because it has admitted that it is not the owner. In a sworn deposition given in this case by Baby Bean's sole member Danny Parks, Parks testified that he was a party to a Partnership Agreement with Perez and, pursuant to the partnership agreement, the *partnership* owned "King of New York". (See Parks Testimony attached to Dayton Dec. as Exhibits E and F) (Partnership owns asserted "King of New York" trademark).

Thus, it is clear that Plaintiff Baby Bean does not own the rights being asserted in "King of New York". The true owner of the rights being asserted - - the Partnership comprised of Parks and Perez- - is an indispensable party and <u>must</u> be joined as a party plaintiff pursuant to Rule 19.[5] <u>See</u> <u>generally</u> <u>Spencer Kellogg & Sons, Inc.</u> v. <u>Bush</u>, 31 Misc.2d 70, 71, 219 N.Y.S.2d 453, 455 (N.Y. Sup. 1961). (if partners "are sought to be held as defendants, sued in their own names on a joint liability as partners," all partners "must be joined as defendants unless one of them is bankrupt, dead, or outside the jurisdiction of the court").

Refusal to allow Perez, Parks and the Partnership to be named as additional counterclaim defendants will result in Defendants' having to make a motion for judgment on the pleadings and/or summary judgment dismissing for lack of standing and failure to join an indispensable party and/or commencing a separate action against Parks, Perez and the Partnership for defamation which will likely be consolidated with the current action. All of these actions will result in duplicative and/or unnecessary effort and expense that can be avoided simply by joining Parks, Perez and the Partnership as additional party plaintiffs so that all related claims may be adjudicated in this one action.

### D.    Counterclaim Defendants' Argument That the Partnership Does Not Exist and Therefore Could Not Have Been Served is Specious

Counterclaim Defendants makes the further specious argument that the Partnership does not exist and could not therefore have been served with process. This is plainly false and

---

[5] Even if plaintiff Baby Bean Productions, LLC is deemed a partner in the partnership that owns "King of New York", plaintiff still cannot claim that it is <u>an</u> owner of the mark, albeit an independent owner, because as a matter of law a trademark may not be independently owned by more than one person or entity. A trademark by definition is an identification of a single source and, unlike a patent or copyright, must be owned by a single person or entity (including a partnership). <u>See</u> 1 <u>McCarthy on Trademarks and Unfair Competition</u>, J. Thomas McCarthy, 4th ed. §3:2 at 3-3 (2008) ("[i]n general, trademarks perform four functions that are deserving of protection in courts: (1) *to identify one seller's goods and distinguish them from goods sold by others*: (2) to signify that all goods bearing the trademark *come from or are controlled by a single, albeit anonymous, source* . . . . " ; <u>Id</u>. at § 3:3 ("[r]ather, to create trademark or trade dress rights, a designation must be proven to perform the job of identification; *to identify one source and distinguish it from other sources; if it does not do this, then it is not protectable as a trademark* . . . .) (emphasis added)  Thus, it is indisputable that Baby Bean is not the owner of the "King of New York" designation that plaintiff purports to assert and plaintiff does not have standing to assert its Section 43(d) claim.

belied by documentary and testimonial evidence. The deposition testimony of Danny Parks, (attached to Dayton Dec. as <u>Exs. E and F</u>) shows that the partnership existed. (<u>E.g.</u>: "Q: And did there come a time when you formed a partnership with respect to the KoNY event? A: <u>Yes</u>."). Moreover, Plaintiff's lawyer Mr. Sonnabend stated in Stipulation that "the Second Amended Complaint filed in this Action shall be deemed amended to join as party plaintiffs pursuant to Fed. R. Civ. P. 19(a) and/or 20(a) . . . the partnership comprised of Danny Parks and Louis Perez". (Dayton Dec. <u>Ex. B</u>) Finally, the "King of New York Event Property Partnership Agreement" pursuant to which the Partnership was formed makes the existence of the Partnership abundantly clear. (Dayton Dec. <u>Exhibit I</u>).

Under New York law, a partnership will be presumed to exist when the evidence establishes the parties intended to and did form a partnership. <u>See</u>, <u>e.g.</u> <u>In re Cross Media Mktg. Corp.</u>, 367 B.R. 435 (S.D.N.Y. Bkrtcy 2007). Among the factors to consider are whether the parties intended to share profits and losses and jointly control management of the business. <u>See</u>, <u>e.g.</u>, <u>Kidz Cloz, Inc.</u> v. <u>Officially for Kids, Inc.</u>, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004).

Here, the Partnership Agreement (titled "King of New York Event Property Partnership Agreement") (Dayton Dec. <u>Ex. I</u>) between Perez and Parks states, inter alia, that "[]he net profits of the partnership shall be divided equally between the partners and the net losses shall be borne equally by them." The Partnership Agreement also states "[t]he partners shall have equal rights in the management of the partnership business." <u>Id.</u> In light of the documentary and testimonial evidence described above, there is little question that the Partnership exists and the statement that no partnership exists should be rejected.

## II.

### COUNTERCLAIM DEFENDANTS LOUIS PEREZ AND THE PARTNERSHIP'S ARGUMENT THAT THE COURT LACKS PERSONAL JURISDICTION OVER THEM SHOULD BE REJECTED

As we demonstrate above, Counterclaim Defendants Perez and the Partnership consented to being named as party plaintiffs by their attorney's execution on their behalf of the Stipulation. In doing so, Perez and the Partnership have consented to personal jurisdiction. Certainly a party may consent to personal jurisdiction (see generally Copenhagen Reinsurance Co (UK) Ltd. v. Sargeant Marine, Inc., No. 98 Civ. 1476, 1998 WL 323489, *1-2 (S.D.N.Y. 1998); National Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315-16, 84 S.Ct. 411, 11 L.Ed 2d 354 (1964)), and a party should not be allowed to revoke such consent after it is given, which is essentially what Perez and the Partnership are trying to do.

In any event, there can be no question that Perez and the Partnership are subject to the personal jurisdiction of this Court. The New York long-arm statute, N.Y. C.P.L.R. § 302(a)(1), provides that a non-domiciliary is subject to the personal jurisdiction of the Court, in person or through an agent, where he "transacts any business within the state or contracts anywhere to supply goods or services in the state." A non-domiciliary "transacts business" under C.P.L.R. § 302(a)(1) when he "purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir.1986) (explaining where there is "joint control" of a business enterprise, and other contacts with the forum state enough has been shown to establish a *prima facie* case of personal jurisdiction).

Section 302 "is a single-act statute requiring but one transaction-albeit a purposeful transaction-to confer jurisdiction in New York." Grand River Enter. Six Nations,

Ltd. v. Pryor, 425 F.3d 158, 166 (2d Cir. 2005). In addition, "where the activities were purposeful and a substantial relationship exists between the transaction and the claim asserted, jurisdiction may be invoked." E.g., Otterbourg, Steindler, Houston & Rosen, P.C. v. Shreve City Apartments Ltd., 147 A.D.2d 327, 331, 543 N.Y.S.2d 978, 980 (N.Y. App. 1 Dep't 1989).

 Here, Danny Parks testified in this case as to the fact that (1) Louis Perez was for 7 or 8 years employed by the New York City Department of Recreation, (2) in that capacity was a founder of and for many years operated the "King of New York" event, which is the event that forms the basis for all of Plaintiff's claims in the underlying claims and the Counterclaims, (3) Perez is a former contestant in and winner of the "King of New York" event in New York city and that (4) Louis Perez was a "co-owner" with Baby Bean of the trademark at issue. (Parks Testimony attached as Exhibits E, F, and H to Dayton Declaration) Moreover, and most importantly, Parks testified in this case that Perez to this day continues to be involved in operation of the "King of New York" event conducted in New York City, including having judged the event in 2007 and being Parks's "right-hand man . . . onsite" at the event. (Dayton Dec. Ex. H).

 The Partnership is subject to personal jurisdiction of this Court in that per the Partnership Agreement it was formed for the sole purpose of owning and managing the "King of New York" event conducted in New York City. (Dayton Dec. Exs. E, F, and I).

 Under these facts, Perez and the Partnership are subject to the personal jurisdiction of this Court. See CutCo Indus., Inc. v. Naughton, supra, 806 F.2d 361; MJ & Partners Rest. Ltd. P'ship v. Zadikoff, 126 F. Supp. 2d 1130 (N.D. Ill. 1999) (a court had jurisdiction when a defamation counterclaim was sufficiently entwined with a partnership's trademark infringement claim when the counterclaim arose from a partnership's letters

describing alleged acts of misappropriation, involving the same individuals, companies, and basic subject matter as the trademark claims). At a minimum, Counterclaim Plaintiff DC should be entitled to take discovery on this issue. See, e.g., Manhattan Life Ins. Co. v. A.J. Stratton Syndicate, 731 F. Supp. 587 (S.D.N.Y. 1990) (where party made a sufficient showing of prior business and meetings in New York, discovery was allowed to establish personal jurisdiction).

### III.

### COUNTERCLAIM DEFENDANTS' ARGUMENTS THAT THE COUNTERCLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED SHOULD BE REJECTED

Counterclaim Plaintiff DC has properly pleaded its Counterclaims for defamation per se and vicarious liability, and Counterclaim Defendants' motion to dismiss these Counterclaims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) should be denied.

A court should deny a Rule 12(b)(6) motion when a party has provided "the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." Gotham Holdings, LP v. Health Grades, Inc., 534 F. Supp. 2d 442, 444 (S.D.N.Y. 2008) (Cedarbaum, J.). In assessing a pleading in the context of a motion to dismiss for failure to state a claim, a court "may not dismiss unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 1992 WL 170559, *3 (S.D.N.Y. 1992) (Cedarbaum, J.) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1052 (2d Cir. 1993) (a court should deny a Rule 12(b)(6) motion unless it appears to a certainty that a party can prove no set of facts entitling him to relief). The task of the court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. Sims v. Artuz, 230

F.3d 14, 20 (2d Cir. 2000). A court must "accept as true the facts alleged in the [pleading] and draw all reasonable inferences in favor of the non-moving party." Amadsau v. Bronx Lebanon Hosp. Center, No. 03 Civ. 6450, 2005 WL 121746, *3 (S.D.N.Y. Jan. 21, 2005).

### A.    Counterclaim Plaintiff DC Has Properly Plead a Claim for Defamation Per Se

To allege properly a claim for defamation per se, a party must assert (1) a false statement; (2) publication without privilege or authorization to a third party; (3) by at least a negligence standard of fault; and (4) the statement either causes special damages or constitutes defamation per se." Matthews v. Malkus, 377 F. Supp. 2d. 350, 357 (S.D.N.Y. 2005); see also Peters v. Baldwin Union Free Sch. Dist., 320 F.3d 164, 169 (2d Cir. 2003) (the elements of a defamation claim are "a false statement, published without privilege or authorization to a third party, constituting fault . . . and it must either cause special harm or constitute defamation per) (citing Dillon v. City of New York, 261 A.D.2d 34, 704 N.Y.S.2d 1, 5 (1999)); Salvatore v. Kumar, 45 A.D.3d 560, 563, 845 N.Y.S.2d 384 (2d Dep't 2007) (same).

Where a statement impugns the basic integrity or creditworthiness of a business, an action for defamation per se lies and injury is conclusively presumed. Celle v. Filipino Reporter Enters., Inc., 209 F.3d 163, 180 (2d Cir. 2000) (citing Ruder & Finn, Inc. v. Seaboard Surety Co., 52 N.Y.2d 663, 439 N.Y.S.2d 858 (1981)); see also Boule v. Hutton, 328 F. 3d 84, 94 (2d Cir. 2003).

Here, Counterclaim Plaintiff alleges all of the necessary elements for a cause of action for defamation and defamation per se. First, the Counterclaims allege a false statement. The false statements themselves are quoted at Paragraph 65 of the Counterclaims and are incorporated by reference and attached in their entirety as Exhibit B to the Counterclaims. These statements include the statement that DC Shoes "stole" Counterclaim Defendants' event concept

and claimed that Counterclaim Defendants' event was actually DC Shoes event. The falsity of such statements is alleged among other places at paragraphs 65, 73, 75, 78, 80, 81, 83, and 86 of the Counterclaims. There be can be no doubt that such false statements are susceptible of a defamatory connotation: the claim that Counterclaimant DC "stole" a concept falsely imputes criminal and unethical behavior. The statement that DC claimed that Counterclaim Defendants' event was actually DC's event similarly falsely imputes unethical behavior. Such statements are unquestionably defamatory.

Second, the Counterclaims allege that the false statements were published to third parties without privilege or authorization. (See, e.g., Counterclaims ¶¶ 67 and 88).

Third, the Counterclaims allege at least a negligence standard of fault. (See Counterclaims ¶ 92).

Fourth, the Counterclaims allege a defamation per se. (See Counterclaims ¶ 90).

Counterclaim Defendants argue feebly and without support that the statements alleged in the Counterclaims are not false and/or are not defamatory. As to the statements that DC "stole" Counterclaim Defendants concept for the "King of New York" event, Counterclaim Defendants merely state that this is somehow not false and/or is privileged because this is a reiteration of Plaintiff's infringement claims. This is not true. Nowhere in any pleading filed by Counterclaim Defendants do they allege that DC stole their concept and therefore this allegation is not part of the infringement claim; nor could such an assertion of stealing a concept be made because "concepts" are not protected by trademark or unfair competition law, which are the claims asserted by Plaintiff in this lawsuit.

As to the falsity of the statement that DC refused requests "not to use the name 'King of New York'", Counterclaim Defendants have no comment at all; in fact, this claim is

similarly false in that, as Counterclaim Plaintiff alleges (Counterclaims ¶ 58), DC has not conducted an event with "King of New York" in the name since September 2006, well before this lawsuit was filed and well before Danny Parks made his defamatory statements on March 5, 2008. Certainly, as a matter of pleading, Counterclaim Plaintiff has successfully asserted a claim for defamation per se upon which relief may be granted.

**B.      The Claims of Defamation Per Se Against Danny Parks, Louis Perez and The Partnership Should be Sustained**

The First Counterclaim for Defamation Per Se is asserted against Baby Bean, Danny Parks, Louis Perez and the Partnership comprised of Perez and Parks. Counterclaim Defendants concede that Baby Bean is a proper defendant for the defamation claim (see Motion to Dismiss at 8, 11). Moreover, Counterclaim Defendants concede that the Counterclaims allege that the defamatory email was written by Parks on behalf of himself individually and on behalf of Baby Bean, Perez and the Partnership (see Motion to Dismiss at 7), but argue without citing a single case that such allegations are insufficient as a matter of law. Counterclaim Defendants are wrong.

As noted above, the Counterclaims properly allege the existence of the Partnership and the fact that the defamatory statements were written by Parks individually or in the alternative on behalf of Perez, Baby Bean and the Partnership. Counterclaim Plaintiff has properly alleged a defamation claim against Parks, Perez and the Partnership.

Moreover, under New York law a partnership and the other partners of a general partnership are liable for the tortious acts of another partner committed in furtherance of partnership business. Ryan v. Brophy, 755 F. Supp. 595, 597 (S.D.N.Y. 1991) ("[u]nder New York law, partners in a partnership are jointly and severally liable for tort claims against the partnership. . . ."); N.Y. Partnership Law § 26; accord Lewis v. Rosenfeld, 138 F. Supp. 2d 466,

476-77 (S.D.N.Y. 2001) ("general partners have joint and several liability for torts committed by the partnership"); Federal Deposit Ins. Corp. v. Shea & Gould, No. 95 Civ. 5491, 1997 WL 401822, *12 (S.D.N.Y. July 17, 1997) (same); Durkin v. Shea, 957 F. Supp. 1360, 1366-67 (S.D.N.Y. 1997) ("[e]ach partner acts, as to himself, as a principal . . . and, as to each other partner, as a general agent"), citing First National Bank of Ann Arbor, Michigan v. Farson, 226 N.Y. 218, 221-22, 123 N.E. 490 (1919); N.Y. Partnership Law § 24 (McKinney's 2001) (the partnership is liable for any wrongful act or omission of any partner acting in the ordinary course of the business partnership"); Ederer v. Gursky, 9 N.Y.3d 514, 881 N.E.2d 204, 851 N.Y.S.2d 108 (N.Y. 2007) (same).[6]

In this case, the deposition testimony of Parks indicates that the original partners in the Partnership were Parks and Perez and Baby Bean later became a partner. (Dayton Dec. Ex. E). The deposition testimony further indicates that the Partnership owns the "King of New York" trademark and event and operates the "King of New York" event. (Dayton Dec. Ex. F). The statements made by Parks in the March 5th Email pertain directly to the "King of New York" trademark and the "King of New York" event, both of which are owned by the Partnership, and therefore such statements are made in furtherance of the business of the Partnership. Accordingly, Perez and the Partnership are jointly and severally liable for the defamatory statements of Danny Parks.

It is also beyond peradventure that Danny Parks is individually liable for his own statements. First, having alleged in the alternative that Parks made the statements in his

---

[6] Counterclaim Defendants cite New York law in their Motion to Dismiss and therefore implicitly concede that New York law is the appropriate law to apply. Motorola Credit Corp. v. Uzan, 388 F. 3d 39, 61 (2d Cir. 2004). Nonetheless, the result is the same under Pennsylvania law. See, e.g., Tupper v. Haymond & Lundy, No. Civ. A. 00-3550, 2001 WL 936650, *8-9 (E.D. Pa. Aug. 16, 2001) (each member of a partnership is personally liable for a tort committed by a copartner acting in the scope of the firm's business); In re Selheimer & Co., 319 B.R. 384, 390-91 (E.D.Pa. Bkrtcy 2005) (under Pennsylvania law, general partners are jointly and severally liable for tortious acts of another partner committed within the scope of the partnership's business); 15 P.S. §8327(1) (all partners are liable jointly and severally for everything chargeable to the partnership under section 8325 (wrongful act of a partner)).

individual capacity and on behalf of Baby Bean, it then becomes a fact issue as to whether he made those statements in his individual capacity or as a representative of Baby Bean and such a determination is not properly made on a 12(b)(6) motion to dismiss.    Second, even if Parks made those statements in his capacity as an officer of Baby Bean, the limited liability company form does not protect an individual for tort liability.  See, e.g., Lopresti v. Terwilliger, 126 F.3d 34, 42 (2d Cir. 1997) ("'[i]t has long been established . . . that a corporate officer who commits or participates in a tort, even if it is in the course of his duties on behalf of the corporation, may be held individually liable"); Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 902 (2d Cir. 1981) ("[i]t is undisputed that an individual who commits a tort while acting in his capacity as a corporate officer or employee may be held personally liable").

Apparently Danny Parks thinks that he can make defamatory and injurious comments about a company, widely distribute those comments, and then hide behind his legal fiction of a single member limited liability company and cry foul when he is called to task individually.    There is no question that Danny Parks the individual made the defamatory comments in his March 5th Email.  Limited liability companies do not make statements, people do.  And yet now, when he is challenged, Parks claims he cannot be held personally responsible because he was acting on behalf of his company.  Unfortunately for Mr. Parks, this is not the law.    As we demonstrate above, corporate officers and employees can be held liable for their own tortious acts and cannot hide behind the corporate form.  Moreover, notice should be taken of Mr. Parks comment that "**to me it's semantics.  It's – Baby Bean Productions is me. Whether it's legal or not, I am Baby Bean Productions**".    (Dayton Dec. Exhibit G). Apparently, Mr. Parks and Baby Bean are one and the same when it suits Mr. Parks but entirely

separate entities when that suits him as well. The claims for defamation against Mr. Parks are entirely justified legally and factually.

### C.   The Second Counterclaim for Vicarious Liability Should be Sustained

Counterclaim Defendants' contention that a cause of action for vicarious liability cannot be independently brought is wholly incorrect as a matter of law. (Motion to Dismiss at 10-12) New York courts have consistently allowed an independent cause of action for vicarious liability. See, e.g., Hughes v. BCI Intern. Holdings, Inc., 452 F. Supp. 2d 290, 306 (S.D.N.Y. 2006) ("[T]here is authority to support the pleading of vicarious liability as a separate claim" when there is an independent and substantive tort cause of action accompanying it); Carell v. Shubert Org., Inc., 104 F. Supp. 2d 236, 271 (S.D.N.Y. 2000) (the court held that a party's pleading complied with the requisite requirements for a claim of vicarious liability for copyright and trademark infringement); see also Lutzker v. Novo Nordisk Pharms., Inc., No. 07 CV 3272, 2008 WL 905040, *6 (E.D.N.Y. April 2, 2008) (claim for vicarious liability for defamation); E.E.O.C. v. Die Fliedermaus, 77 F. Supp. 2d 460, 473 (S.D.N.Y. 1999) (claim for vicarious liability for intentional torts and defamation).

In support of their Motion to Dismiss the vicarious liability claim Counterclaim II, Counterclaim Defendants cite only one case -- an international aiding and abetting case, Khulamani v. Barclay Nat. Bank Ltd., 504 F.3d 254, 329 (2d Cir. 2007), which is distinguishable because the claims deal with liability and violations of international law, the Alien Tort Claims Act , and the Torture Victim Protection Act (all of which are not applicable here), and which does not support their assertion that vicarious liability is not a cause of action unto itself.

Here, because Counterclaim Plaintiff asserts defamation per se as the substantive, underlying tort for its vicarious liability claim against Counterclaim Defendants, the vicarious

liability claim is appropriate.  Thus, Counterclaim Defendants' Motion to Dismiss the Second

Counterclaim for Vicarious Liability claim must be denied.[7]

### IV.

### COUNTERCLAIM DEFENDANTS' MOTION FOR SANCTIONS SHOULD BE REJECTED AND IS ITSELF SANCTIONABLE

Counterclaim Defendants seek sanctions pursuant to 28 U.S.C. § 1927 and Fed. R.

Civ. P. 11, which is truly ironic since it is Counterclaim Defendants that are taking positions

(1) directly contrary to fact and law and (2) in stark contradiction to other positions they have

taken in this case, and it is Counterclaim Defendants that are frivolously and unnecessarily

escalating these proceedings.  As we demonstrate below, Counterclaim Defendants do not come

remotely close to showing that any actions of Counterclaim Plaintiffs or their lawyers are

sanctionable.  In fact, the actions of Counterclaim Defendants are in themselves sanctionable.[8]

Cutting through Counterclaim Defendants' inflammatory rhetoric, as best as we

can discern Counterclaim Defendants contend that Counterclaim Plaintiff has engaged in two

types of wrongful conduct:  (1) bringing claims for defamation against the individuals Danny

Parks and Louis Perez and (2) including ad damnum clauses in each of the first and second

counterclaims of amounts to be proven at trial in excess of $3 million in actual and punitive

damages.  These actions are entirely appropriate.

---

[7] The motion to dismiss of Counterclaim Defendants should be denied for the further reason that Counterclaim Defendants have failed to comply with the local rules of the Court with respect to use of Notices of Motion and failing to include a return date for the motion.  See Local Rule 6.1(b) ("on all civil motions . . . other than those described in Rule 6.1(a), and other than petitions for writs of habeas corpus, (1) the notice of motion . . . shall be served by the moving party . . . ."); Rule 3(c) of the Individual Practices of Judge Cedarbaum requires a return date to be inserted into the Notice of Motion.

[8] To the extent that Counterclaim Defendants are seeking sanctions under Fed. R. Civ. P. 11, they have woefully failed to comply with the provisions of Rule 11(c)(2) which require that a motion separate from any other motion be prepared and served on the opposing party but not filed or otherwise presented to the court, giving the opposing party an opportunity to withdraw the objected to pleading.

### A.    Counterclaim Plaintiff DC's Claims are Colorable and Meritorious

28 U.S.C. § 1927 provides that any attorney who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. Courts in this circuit construe § 1927 "narrowly and with great caution, so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." Mone v. C.I., 774 F.2d 570, 574 (2d Cir. 1985). To impose such sanctions," a court must find "clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." Id. (citing Agee v. Paramount Communications, 114 F.3d 395, 398 (2d Cir.1997)). "An award under section 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Id. (citing Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 79 (2d Cir.2000)). A party must show "bad faith" for an award of sanctions under section 1927. Id.

### 1.    Claims Against Individual Defendants

As to the claims against the individual Counterclaim Defendants, as demonstrated above in Section III.B and below, such claims are entirely appropriate as a matter of law and fact in that an individual and a partnership are liable for the tortious activities of a partner acting in furtherance of partnership business and an individual making defamatory statements cannot hide behind a corporate shield but rather is individually liable. Counterclaim Defendants do not cite a single case to support their position that the individual defendants or the Partnership are not liable for Parks's defamatory statements. Accordingly, Counterclaim Defendants cannot show that such claims were unreasonable, solely to vex or brought in bad faith.

a.    Danny Parks

*"To me it's semantics. It's – Baby Bean Productions is me. Whether it's legal or not, I am Baby Bean Productions"*

Sworn Deposition Testimony of Danny Parks, February 6, 2008

As we note above, the claims against Parks individually are entirely appropriate and supported by fact and law. The fact that the allegations against Parks are pleaded in the alternative - - individually and on behalf of Parks and Perez - - is standard and appropriate pleading procedure and totally supported by law and fact in this case. (See Dayton Dec. Ex. G).

b.    Louis Perez

Similarly, the claims for defamation against Louis Perez individually are also entirely justified under the facts and the law. As we demonstrate above, the Partnership owns the asserted trademark "King of New York" and the "King of New York" event. The defamatory statements made in the March 5th Email directly relate to the "King of New York" trademark and event. Such statements were made by Danny Parks. As a matter of New York law, liability for tortious acts made by a partner in furtherance of partnership business are attributable to each partner and each partner can be liable for such acts. See Section III.B. Accordingly, Perez is liable for the acts of his partner Danny Parks and is a proper counterclaim defendant. Thus, the claims for defamation against Perez are justified legally and factually.

2.    **Ad Damnum Request**

There is nothing sanctionable about including a request for damages in an unspecified amount to be proved at trial believed to be in excess of a stated amount. Here the damage caused by Counterclaim Defendants' defamatory statements is impossible to determine in this case but unquestionably large. The public responses to Parks's defamatory statements

have been loud and angry and it is unclear what the total shake-out of damages will be.  Some examples of public written responses to the defamatory comments are attached to the Counterclaims and are as follows:  (1) "wow. Amazing. One more reason DC will never see a penny of my hard-earned cash" (Counterclaims Ex. C-6; Dayton Dec. Ex. A); (2) "I just gave my radars (DC product) away because of this" (Counterclaims Ex. C-4; Dayton Dec. Ex. A); (3) "Just because of this I will not be buying another pair of dc's, and myn [sic.] will be replaced in a week" (Counterclaims Ex. C-4; Dayton Dec. Ex. A); (4) "I'm going to punk anyone who wheres [sic.] dc cause quicksilver [sic.] is lame" (Counterclaims Ex. C-4; Dayton Dec. Ex. A); and (5) "f—k DC that's why I will never rock there [sic.] s—t" (Counterclaims Ex. C-4; Dayton Dec. Ex. A).  In light of these statements and others it is certainly reasonable to seek damages in an unspecified amount in excess of a stated and significant amount.

### B.  The Actions of Counterclaim Defendants are Themselves Sanctionable

Ironically, it is Counterclaim Defendants and their attorney that have made false representations of fact, have withheld documents from the Court that they have agreed to provide, and have unduly escalated and multiplied this litigation in bad faith in the following ways, among others:

(1) Counterclaim Defendants' refusal to recognize and acknowledge the existence of the Partnership merits sanctions under Rule 11.  Plaintiffs' mischaracterization of the Partnership as a "phantom partnership" (Motion to Dismiss at 2), "non-existent" (Motion to Dismiss at 6) and "illusory" (Motion to Dismiss at 7) is preposterous after Parks testified to the existence of the partnership with co-partner Perez and the documents exchanged during discovery support the existence of the Partnership, including the Partnership Agreement.

(2)      Counterclaim Defendants' disavowal of and refusal to abide by or even acknowledge their own consent to be added as party plaintiffs in this action, causing unnecessary waste of judicial resources with this Motion to Dismiss and inefficiency in this litigation.  As explained above, the Stipulation evidences the parties' agreement to join Parks, Perez and the Partnership as party plaintiffs in this case; thus, Counterclaim Defendants inexplicable refusal to acknowledge the Stipulation and their agreement with Defendants warrants sanctions.

(3)      Counterclaim Defendants' lawyer's purposeful withholding of and not filing the Stipulation with the individual signatures that he had agreed to provide thereby causing great effort and expense to be incurred in responding to their motion.  This is highlighted by the fact that counsel for Counterclaim Defendants' has stated that he has the individual signature of at least Danny Parks in his possession but has not yet filed the Stipulation even with that signature.  (Dayton Dec. ¶ 6)

The actions of Counterclaim Defendants' and their lawyer in bringing their motion for sanctions have patently, unreasonably and vexatiously multiplied the proceedings and are without any colorable merit.  Counterclaim Defendants and their counsel should therefore be sanctioned pursuant to 28 U.S.C. § 1927.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss the Counterclaims and for Sanctions should be denied in its entirety, the Court should order Plaintiff to submit the Stipulation signed by Perez, Parks and the Partnership adding them as party plaintiffs, the Court should order Counterclaim Defendants to pay the excess court costs, attorneys fees and expenses incurred by reason of their frivolous motion and request for sanctions, and the Court should grant such other and further relief as it deems proper.

Dated: New York, New York
      August 6, 2008

KANE KESSLER, P.C.

By: _____
     Adam M. Cohen (AMC-9918)
     Lauren M. Dayton (LMD-9291)
1350 Avenue of the Americas
New York, New York 10019
(212) 541-6222

*Attorneys for Defendants/Counterclaim Plaintiffs*
*DC Shoes, Inc. and Quiksilver, Inc.*